DETROIT PUBLIC SCHOOLS BOARD OF EDUCATION v ROMULUS
COMMUNITY SCHOOLS BOARD OF EDUCATION

Docket No. 201212. Submitted June 10, 1997, at Detroit. Decided December 19, 1997, at 9:05 A.M. Leave to appeal sought.

The Detroit Public Schools Board of Education brought an action in the Wayne Circuit Court against the Romulus Community Schools Board of Education, seeking an injunction against the defendant's continued operation of the Romulus-Baron Academy within the geographic confines of the Detroit Public Schools District and a declaration that the defendant could not, without the approval of the Detroit Public Schools District, seek state aid payments for those academy pupils who resided in the Detroit Public Schools District. The court, Kathleen MacDonald, J., granted summary disposition for the defendant, ruling that the plaintiff had failed to state a claim on which relief could be granted. The plaintiff appealed.

The Court of Appeals held:

Under the State School Aid Act of 1979, MCL 388.1601 et seq.; MSA 15.1919(901) et seq., a district must have the approval of a nonresident pupil's district of residence to count the pupil in membership and thus receive state aid for the pupil. An exception to this approval requirement exists for pupils enrolled in a district other than their districts of residence but within the same intermediate district if the educating district enrolls nonresident pupils in accordance with MCL 388.1705; MSA 15.1919(1005), the "schools of choice" provision.

The Legislature, in authorizing state aid payments for nonresident pupils without the approval of their districts of residence, intended the term "district" to mean geographical area, not corporate entity. Accordingly, those Romulus-Baron Academy pupils who resided in the Detroit Public Schools District did not enroll in a district other than their district of residence and the defendant cannot seek state aid payments for those pupils.

Reversed and remanded.

SCHOOLS — STATE SCHOOL AID ACT — NONRESIDENT PUPILS — APPROVALS BY DISTRICTS OF RESIDENCE.

A public school district that operates a school within the geographical boundaries of another district may not, without the approval of the other district, seek state aid payments for those of its pupils who are residents of the other district (MCL 388.1606[6], 388.1705; MSA 15.1919[906][6], 15.1919[1005]).

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Jerome R. Watson* and *Charles A. Duerr, Jr.*), for the plaintiff.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Thomas H. Schwarze, Robert A. Lusk,* and *Joseph R. Furton, Jr.*), for the defendant.

Before: WHITE, P.J., and BANDSTRA and SMOLENSKI, JJ.

BANDSTRA, J. The question presented is whether a public school district may operate a school within the geographical boundaries of another district and, without the approval of the other district, seek state aid payments for pupils from the other district who are enrolled at that school. We conclude that it may not.

Plaintiff Detroit Public Schools Board of Education (Detroit Public Schools) is a board of education for a school district with geographical boundaries that are coextensive with the City of Detroit. Defendant Romulus Community Schools Board of Education (Romulus Community Schools) is a board of education for a school district with geographical boundaries that are coextensive with the City of Romulus. The two school districts are within the same intermediate district, but their boundaries are at no point contiguous; the City of Romulus is a suburb located some distance from the City of Detroit.

In the summer of 1996, the Romulus Community Schools entered into a contract with Baron Schools, Inc., a private entity, in which Baron agreed to pro-

vide instruction and training to "alternative education pupils." Pursuant to that contract, the Romulus-Baron Academy was opened in the fall of 1996, at a location within the Detroit Public Schools District. The Detroit Public Schools became concerned because most, if not all, of the pupils enrolled at the Romulus-Baron Academy resided in the Detroit Public Schools District and the Romulus Community Schools intended to seek state aid payments for those pupils.

The Detroit Public Schools filed this action seeking an injunction against the continuing operation of the Romulus-Baron Academy and a ruling that the Romulus Community Schools could not count pupils at the Romulus-Baron Academy who resided in the Detroit Public Schools District for state aid purposes. Both parties moved for summary disposition, and the trial court granted relief to the Romulus Community Schools, concluding that there was no statutory limitation preventing the Romulus Community Schools from locating a school in the Detroit Public Schools District and seeking state aid payments for pupils enrolled at that school who reside in the Detroit Public Schools District. The trial court thus decided as a matter of law that Detroit Public Schools failed to state a claim, MCR 2.116(C)(8), a decision that we review de novo on appeal. *ABC Supply Co v River Rouge*, 216 Mich App 396, 397; 549 NW2d 73 (1996).

Initially, the Romulus Community Schools argues that the Detroit Public Schools has no standing to bring this action. As explained more fully below, however, the Detroit Public Schools has a specific statutory right to approve or disapprove of the enrollment of Detroit pupils at the Romulus-Baron Academy and this constitutes a legally protected interest sufficient

to confer standing. *Wortelboer v Benzie Co*, 212 Mich App 208, 214; 537 NW2d 603 (1995); *Waterford School Dist v State Bd of Ed*, 98 Mich App 658, 666-667; 296 NW2d 328 (1980), aff'd sub nom *Durant v State Bd of Ed*, 424 Mich 364; 381 NW2d 662 (1985). Further, although the Romulus Community Schools argues that decisions regarding state aid payments are to be made by the executive department, this matter involves significant questions of legislative interpretation that are within the province of the judiciary. *Wickham v Carlton Twp School Dist No 2*, 325 Mich 94, 98; 37 NW2d 770 (1949). Finally, following oral argument, Romulus Community Schools filed a supplemental brief arguing that this issue should be dismissed as moot because the Romulus-Baron Academy no longer operates within the Detroit Public Schools District. We disagree. The record is not clear regarding whether or where the school is being operated this school year or how its operation this school year might affect state aid payments for the prior year.

On the merits, the dispositive question presented is whether the Romulus Community Schools can seek state aid payments, in the absence of the consent of the Detroit Public Schools, for the Detroit pupils enrolled at the Romulus-Baron Academy.[1] The trial

---

[1] We need not determine the subsidiary issues raised on appeal: whether, without seeking state aid payments, the Romulus Community Schools has statutory authority to operate a school located within the Detroit Public Schools District or to educate pupils who reside in Detroit at that location. These are hypothetical questions; the record indicates that Romulus Community Schools has no interest in providing education at the Romulus-Baron Academy to pupils who do not qualify for state aid payments. Further, there is an inadequate factual record on important underlying issues: whether any of the Romulus-Baron pupils reside outside the Detroit Public Schools District and, if so, whether they reside in the Romulus Community Schools district or elsewhere. Finally, as a

court reasoned that this issue is governed largely by the State School Aid Act of 1979 (SSAA), MCL 388.1601 *et seq.*;    MSA 15.1919(901) *et seq.* However, the Revised School Code (RSC), MCL 380.1 *et seq.*; MSA 15.4001 *et seq.*, relates to the same subject or shares a common purpose with the SSAA, and we will consider the two acts together in determining legislative intent. *Jennings v Southwood,* 446 Mich 125, 136; 521 NW2d 230 (1994);   *State Treasurer v Schuster,* 215 Mich App 347, 352; 547 NW2d 332 (1996).

The SSAA generally provides that "[a] district must have the approval of the pupil's district of residence to count the pupil in membership" and thus receive state aid for a nonresident student. MCL 388.1606(6); MSA 15.1919(906)(6). The statute establishes a number of exceptions to the general requirement that the pupil's district of residence must approve of another district's counting the pupil in membership; the exception at issue here is "for pupils enrolled in a district other than their district of residence but within the same intermediate district if the educating district enrolls nonresident pupils in accordance with section 105." *Id.*[2] Section 105 of the SSAA is commonly

practical matter, our decision regarding the state aid question will determine whether schools such as the Romulus-Baron Academy will be established; in the absence of the approval of the school district in which they would be located, such schools will not qualify for state aid and they will not be established.

[2] Since this controversy began, the Legislature has amended this statutory section. Romulus Community Schools argues that this amendment illustrates that the statutory language at issue here was not intended to disallow schools like the Romulus-Baron Academy. We disagree. The amendment arose out of uncertainty regarding the intent of the Legislature and the resulting controversy that also spawned this litigation; accordingly, we understand the amendment to be a legislative interpretation of the original act rather than a substantial change of it. *Production Credit Ass'n of Lansing v Dep't of Treasury,* 404 Mich 301, 318; 273 NW2d

referred to as the "schools of choice" provision. MCL 388.1705; MSA 15.1919(1005).

Under the statutory language, the question at issue is whether the Detroit pupils enrolled at Romulus-Baron Academy were "enrolled in a district other than their district of residence" and thus within the exception to the approval requirement as a prerequisite for state aid payments. We conclude they were not.

Under both the SSAA and the RSC, two meanings can be ascribed to the terms "district" or "school district." First, these terms can refer to a geographical area. *Detroit Bd of Ed v Superintendent of Public Instruction*, 319 Mich 436, 450; 29 NW2d 902 (1947) ("the term 'school district' is commonly regarded as a legal division of territory"); *Nalepa v Plymouth-Canton Community School Dist*, 207 Mich App 580, 587; 525 NW2d 897 (1994), aff'd 450 Mich 934 (1995) ("A school district, like a county, township, or city, encompasses a defined geographical area."). Thus, for example, the RSC provides that the geographical area of the district can be enlarged or diminished through consolidations, annexations, or transfers of territory. MCL 380.851-380.971; MSA 15.4851-15.4971. Alternatively, "district" or "school district" can mean the corporate entity or state agency empowered to carry out the work of education. *Jones v Grand Ledge Public Schools*, 349 Mich 1, 6; 84 NW2d 327 (1957) (a school district is a state agency of legislative creation); *Daniels v Grand Rapids Bd of Ed*, 191 Mich 339, 347; 158 NW 23 (1916) (school districts are invested with cor-

---

10 (1978); *Harper v Progressive Casualty Ins Co*, 79 Mich App 764, 768; 263 NW2d 1 (1977).

porate characteristics and distinguished and recognized as quasi-corporations). Accordingly, for example, the RSC provides that a "[p]ublic school . . . is operated *by* a school district . . . . " MCL 380.5(5); MSA 15.4005(5) (emphasis added).

The gist of the Romulus Community Schools' argument in this case is that this latter definition of "district" was intended by the Legislature when it authorized state aid payments without district-of-residence approval under the schools of choice option "for pupils enrolled in a district other than their district of residence." MCL 388.1606(6); MSA 15.1919(906)(6). Romulus Community Schools would have us conclude that this language applies to any pupil enrolled in a school operated under the authority of a district providing schools of choice services, regardless of where that school is located. We disagree.

The first criterion in determining legislative intent is the specific language of the statute. *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996). We presume that every word in a statute has meaning and avoid any construction that would render any word used by the Legislature surplusage or nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992). We conclude that the Legislature's use of the word "in" evidences a legislative intent that the term "district" was employed in its geographical sense. Had the Legislature intended the result the Romulus Community Schools argues for in this case, it could easily have provided an exception to the district-of-residence approval requirement for pupils enrolled *by* a district other than their district of residence, for pupils enrolled *in a school operated by* a district other than their district of residence, or used

some similar language. As noted earlier, the Legislature has employed such language in other contexts. MCL 380.5(5); MSA 15.4005(5). That approach would have evidenced an intent that the term "district" was being used in its corporate or agency sense; the exception at issue here would have applied whenever a pupil was enrolled in a school operated under the authority of a district other than the district of residence.

Because the Legislature used the term "in," we conclude, quite simply, that the Detroit pupils who enrolled at the Romulus-Baron Academy, located in the Detroit Public Schools District, enrolled in their district of residence rather than another district. Even assuming that the Romulus-Baron Academy was otherwise properly a school of choice, no state aid payments may be provided without the approval of the Detroit Public Schools.[3]

Our analysis of the Legislature's intent is buttressed by transportation services language contained within the schools of choice section:

> This section does not require a district to provide transportation for a nonresident pupil enrolled in the district under this section or for a resident pupil enrolled in another district under this section. However, at the time a

---

[3] For the reasons stated, the Romulus Community Schools is not entitled to state aid payments for Detroit pupils enrolled at the Romulus-Baron Academy, approval not having been provided by the Detroit Public Schools. This renders moot arguments advanced by the Detroit Public Schools that the Romulus-Baron Academy is not a proper school of choice. Further, we need not consider arguments advanced by the Romulus Community Schools that technical noncompliance with the schools of choice requirements, MCL 388.1705; MSA 15.1919(1005), should only minimally affect state aid payments; Romulus Public Schools is entitled to no state aid payments whatsoever under MCL 388.1606(6); MSA 15.1919(906)(6).

nonresident pupil enrolls in the district, a district shall provide to the pupil's parent or legal guardian information on available transportation to and from the school in which the pupil enrolls. [MCL 388.1705(15); MSA 15.1919(1005)(15).]

This language evidences a legislative intent that pupils enrolled in a schools of choice program would have to be transported from their district of residence to the district operating the program. Transportation would not be required if, as the Romulus Community Schools argues, schools of choice programs were intended to be offered to students in the districts in which they reside.

We also note that well-settled common-law principles are not to be abolished by implication in the guise of statutory interpretation, *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652-653; 513 NW2d 799 (1994), and that statutes are to be interpreted so that they make the least change necessary to those principles, *Energetics, Ltd v Whitmill*, 442 Mich 38, 51; 497 NW2d 497 (1993). As the Detroit Public Schools argues in this case, the principle of local control of public schools is deeply rooted and long established. *Milliken v Bradley*, 418 US 717, 741-742; 94 S Ct 3112; 41 L Ed 2d 1069 (1974); *Durant, supra* at 385-386. The Legislature certainly has authority to abrogate that principle and, through the schools of choice provisions of the SSAA, it has done so by allowing students to receive their educations outside their own districts of residence. However, there is nothing in this statute to indicate that the Legislature intended the further abrogation of local control resulting from the establishment and

location of schools like the Romulus-Baron Academy, outside the district of control.[4]

The trial court's order granting Romulus Community Schools' motion for summary disposition is reversed. We remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party may assess costs, a public question being at issue. MCR 7.219.

SMOLENSKI, J., concurred.

WHITE, P.J. I concur in the result only.

---

[4] Neither is there any indication in anything other than the statute that this was the intent. The Detroit Public Schools has presented newspaper accounts concerning the enactment of the schools of choice provisions, and they do not reflect the hue and cry that would be expected if the legislative intent was to allow schools like the Romulus-Baron Academy to be located within the boundaries of nonconsenting districts. There is no substantive legislative analyses or other legislative history of the schools of choice provisions, their enactment being part of the annual amendment of the SSAA during the appropriations process. The Detroit Public Schools points to a letter written near the beginning of the 1996-97 school year by then-Representative William R. Bryant, Jr., and directed to Arthur Ellis, who was then State Superintendent of Public Instruction. The Bryant letter supports our analysis. However, even though Representative Bryant was serving as Chairman of the House Committee on Education at the time he wrote the letter, Michigan Manual, 1995-1996, p 179, we do not consider statements made by any individual legislator as proper evidence of general legislative intent.