# STATE OF MICHIGAN

# COURT OF APPEALS

MARC S. THROOP,

Plaintiff-Appellant,

v

GULL LAKE COMMUNITY SCHOOLS, LISA K. ANDERSON, NOREEN C. ARNOLD, DONALD J. EASTMAN, KARYN E. FURLONG, and CHRISTOPHER RUNDLE,

Defendants-Appellees.

UNPUBLISHED
November 16, 2017

No. 335403
Kalamazoo Circuit Court
LC No. 2015-000533-CZ

Before: HOEKSTRA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

In this action involving tort claims and breach of contract, plaintiff appeals as of right the trial court's order granting summary disposition to defendants pursuant to MCR 2.116(C)(7) and (C)(10). Because plaintiff's contract claim fails as a matter of law and defendants are entitled to governmental immunity from plaintiff's tort claims, we affirm.

Plaintiff is the former athletic director for Gull Lake Community Schools (GLCS). For many years, until his retirement in June of 2013, plaintiff was the full-time athletic director. Following his retirement, in August of 2013, plaintiff became a part-time athletic director. Plaintiff was fired from his part-time position in February of 2015, after financial irregularities were discovered in the cash receipts collected from ticket sales during sporting events. Plaintiff admitted that he took money from the cash receipt box, but he asserted that he used the money for permissible school business, such as buying food for coaches' meetings. Plaintiff received a termination letter and a press release was issued regarding his termination. After his termination, plaintiff filed the current lawsuit against GLCS and several GLCS employees, alleging breach of his employment contract, tortious interference with contractual relations, intentional infliction of emotional distress, defamation, false light, and gross negligence. Essentially, plaintiff maintained that he had been falsely accused of embezzlement and wrongfully discharged.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that plaintiff's tort claims were barred by governmental immunity and that plaintiff's contract claim failed because he was an at-will employee who could be terminated for any reason or no reason at all. Plaintiff disputed defendant's contentions, claiming that governmental

-1-

immunity did not apply, that he could only be fired for just-cause, and that, before termination, he was entitled to the disciplinary procedures set forth in GLCS's Bylaws and Policies. The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(7) and (C)(10), concluding that defendants were entitled to the protections of governmental immunity and that plaintiff was an at-will employee. Plaintiff now appeals as of right.

## I. BREACH OF CONTRACT

Plaintiff first argues that the trial court erred by granting summary disposition on his breach of contract claim. Plaintiff notes that, after retiring, he returned to employment with GLCS as athletic director; and plaintiff contends that the only change to the terms of his employment was that he moved from full-time to part-time. Plaintiff also maintains that he had a contract for a definite term of employment for the 2014-2015 school year and that he legitimately expected that his employment would not be terminated except for just cause. According to plaintiff, after 27 years of employment with GLCS, GLCS's Bylaws and Policies became a legally enforceable part of his employment relationship with GLCS. Under the Bylaws and Polices, defendant contends that he was an "administrator" entitled to due process and that he could only be fired with majority board approval. Thus, plaintiff argues that defendants breached his employment contract by terminating him without due process, without board approval, and without just cause. At a minimum, plaintiff asserts that a genuine issue of fact exists regarding the terms of his contract and the applicability of GLCS's Bylaws and Policies.

We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all the evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact." *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

We also review de novo questions of contract interpretation. *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354 (2010). "The goal of contract interpretation is to read the document as a whole and apply the plain language used in order to honor the intent of the parties." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (citation omitted). Clear and unambiguous contract language must be enforced as written. *Id.*

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). An at-will employee may be terminated "at any time and for any—or no—reason, unless that termination was contrary to public policy." *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 572-573; 753 NW2d 265 (2008). The presumption that employment is at-will is rebuttable, and may be "overcome with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Lytle v Malady (On Rehearing)*, 458 Mich 153, 164; 579 NW2d 906 (1998).

Courts have recognized the following three ways by which a plaintiff can prove such contractual terms: (1) proof of "a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause;" (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee. [*Id.* (citations omitted).]

In this case, we begin by rejecting plaintiff's assertion that the terms of his employment did not change when he returned to GLCS as a part-time employee following his retirement. While employed as the full-time athletic director, plaintiff had a 5-page contract containing 23-paragraphs detailing the terms and conditions of his employment. He then retired in June of 2013. When he returned to GLCS in August of 2013 as the part-time athletic director, his hours were reduced, a new position of "high school events supervisor" was created to take over some of his former responsibilities, and his agreement with GLCS consisted of a barebones 1-page "Memorandum." It is this Memorandum that is the starting point for discerning the terms of his employment, not his former agreement or his previous expectations. Indeed, the stark difference between plaintiff's former contract and the new Memorandum underscores the conclusion that plaintiff's new part-time position was not subject to the same terms of employment as his former position as full-time athletic director.

Turning to the Memorandum, the document gives no indication that plaintiff could only be discharged for just cause. The agreement also does not contain a definite term. The agreement specifies that it is "effective" on August 5, 2013, but it contains no end date and no length of time the agreement is effective.[1] Absent a definite term or a just cause provision, the Memorandum does not rebut the presumption that plaintiff was an at-will employee. *Lytle*, 458 Mich at 164. Apart from the Memorandum, plaintiff has not offered evidence of an express, "clear and unequivocal," written or oral contract regarding job security. See *id.* To the contrary, the available evidence indicates that when plaintiff was hired on a part-time basis he was given no "promises" of a set term and was instead only offered the at-will Memorandum.

Plaintiff also argues that he had a legitimate expectation of job security based on the applicability of GLCS's Bylaws and Polices. Contrary to plaintiff's arguments, assuming these policies apply to plaintiff,[2] plaintiff points to nothing in the Bylaws and Polices which states that he could only be terminated for just cause or that he had a set term of employment. At most, the provisions to which he cites suggest a procedural disciplinary scheme created by the Bylaws and

---

[1] Plaintiff notes that the agreement states his annual salary and provides that the amount will be paid "in 26 equal installments." We read this as an explanation of the manner and frequency of payment, not an indication of a definite term of employment. Indeed, the Memorandum indicates that it was being cc'ed to the payroll department.

[2] Plaintiff's Memorandum describes his "employment status" as "administrator," and under GLCS's Bylaws and Policies, administrators are considered "professional staff" and the provisions to which plaintiff cites apply to "staff" and/or "administrators."

Policies. But, on its own, this sort of disciplinary scheme does not establish a promise of termination for just cause only nor does it give rise to an expectation of job security. See *Biggs v Hilton Hotel Corp*, 194 Mich App 239, 241-242; 486 NW2d 61 (1992).

Overall, plaintiff simply has not overcome the at-will employment presumption and he has not demonstrated that he could only be terminated for just cause. See *Lytle*, 458 Mich at 164; *Biggs*, 194 Mich App at 241-242. Because he was an at-will employee, plaintiff could be fired at any time for any reason or no reason at all, and his claim for breach of contract based on his termination is therefore without merit. Thus, the trial court properly granted defendants' motion for summary disposition under MCR 2.116(C)(10).

## II. GOVERNMENTAL IMMUNITY

Plaintiff next argues that the trial court erred by concluding that governmental immunity barred his tort claims. Plaintiff contends that defendant Christopher Rundle lacked the authority to terminate plaintiff and to issue a press release regarding plaintiff's termination, such that Rundle is not absolutely immune and GLCS is not entitled to immunity for Rundle's conduct. Plaintiff also claims that the other individual defendants were grossly negligent and the proximate cause of his injuries. At a minimum, plaintiff contends that questions of fact remain.

As noted, we review a decision on a motion for summary disposition de novo. *Barnard Mfg Co, Inc*, 285 Mich App at 369. Summary disposition is proper under MCR 2.116(C)(7) where a party enjoys immunity under the law. "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Blue Harvest, Inc v Dep't of Trans*, 288 Mich App 267, 271; 792 NW2d 798 (2010). "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Id.* (quotation marks and citations omitted).

## A. GULL LAKE COMMUNITY SCHOOLS

Under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, with certain exceptions, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). This immunity "is expressed in the broadest possible language—it extends immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Rd Com'n*, 463 Mich 143, 156; 615 NW2d 702 (2000). While there are exceptions to governmental immunity, these exceptions must be narrowly construed. *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 614; 664 NW2d 165 (2003). Further, a party suing a governmental agency bears the burden of pleading "his or her claim in avoidance of governmental immunity." *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014) (citation omitted).

In this case, GLCS is a general powers school district under MCL 380.11a, engaged in the operation of a public school system. By statute, a "school district" is a "governmental agency." MCL 691.1401(a); (e). Moreover, the operation of a public school system, including

the hiring and termination of school personnel, constitutes a governmental function. See *Stringwell v Ann Arbor Pub Sch Dist*, 262 Mich App 709, 712; 686 NW2d 825 (2004); MCL 380.11a(3)(d). It follows that, while engaged in the operation of a public school system, GLCS is a governmental agency engaged in the discharge of a governmental function, and thus GLCS is immune from *all* tort liability under MCL 691.1407(1). Although there are exceptions to governmental immunity,[3] plaintiff has not identified any exception that would apply to the facts of this case and he has failed to plead in avoidance of governmental immunity. As such, GLCS was entitled to governmental immunity from all of plaintiff's tort claims. The trial court properly granted summary disposition to GLCS under MCR 2.116(C)(7).

## B.  HIGH-RANKING EXECUTIVE OFFICIAL

In addition to GLCS, plaintiff sued five individual defendants, all of whom are employed by GLCS. Notable among these individual defendants is Christopher Rundle, the superintendent of GLCS, who investigated the financial irregularities related to the cash receipt boxes. Following an interview with plaintiff, it was Rundle who relieved plaintiff of his duties, Rundle who sent plaintiff a termination letter, and Rundle who issued a press release reporting plaintiff's termination. The issue before us is whether Rundle is entitled to absolute immunity under MCL 691.1407(5).

Under MCL 691.1407(5), "[a] judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority." The scope of an actor's authority must be considered in light of the particular circumstances. *Backus v Kauffman*, 238 Mich App 402, 410; 605 NW2d 690 (1999). Specifically, whether an executive official acts within his "executive authority" is an objective inquiry, involving consideration of a number of factors, "including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Petipren v Jaskowski*, 494 Mich 190, 206; 833 NW2d 247 (2013) (citation omitted).

In this case, as the superintendent of GLCS, Rundle is the highest-ranking official of a level of government. *Nalepa v Plymouth-Canton Cmty Sch Dist*, 207 Mich App 580, 589; 525 NW2d 897 (1994). Moreover, the evidence demonstrates that Rundle acted within the scope of his authority by investigating allegations that plaintiff took money from the cash receipt box, firing plaintiff for this infraction, and issuing a press release. For instance, pursuant to the GLCS Bylaws and Policies, the superintendent is the "chief executive officer" of the school district, and the superintendent is responsible for supervising "all programs and staff" in the school district as

---

[3] "The six statutory exceptions are:  the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Wesche v Mecosta Co Rd Com'n*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008).

well as implementing school board policies and directives. In terms of discipline, the Bylaws and Policies empower the superintendent to investigate allegations of misconduct and to take disciplinary action against staff. Additionally, under the Bylaws and Policies, one of the school board's stated policies is to "keep the public informed" on matters of importance, including issues related to personnel, and the superintendent is responsible for directing the public information program as well as "creat[ing] and maintain[ing] good public relations." The superintendent is also in charge of keeping staff informed and making "official communications" to the staff. More generally, the Bylaws and Policies provide that the superintendent is "delegated the authority to take necessary action in circumstances not provided for" in the Bylaws and Policies. Aside from the Bylaws and Policies, defendants submitted affidavits from Rundle and the school board president, averring that the superintendent has been delegated the authority to fire at-will employees, to immediately fire individuals engaging in misconduct, and to issue press releases on behalf of GLCS.

Overall, considering Rundle's position at GLCS and the allocation of powers in the GLCS, there is no genuine issue of material fact with regard to whether, in his role as superintendent, Rundle had authority (1) to investigate the financial concerns regarding plaintiff's handling of the cash receipt boxes, (2) to terminate plaintiff, (3) to write the letter of termination, and (4) to issue the press release on behalf of GLCS. Because these activities fell within the scope of Rundle's executive authority, Rundle was absolutely immune from tort liability under MCL 691.1407(5) as a matter of law, and the trial court properly dismissed plaintiff's tort claims against Rundle under MCR 2.116(C)(7).

## C. LOW-RANKING EMPLOYEES

Aside from Rundle, plaintiff filed suit against four other individual defendants who, unlike Rundle, are low-ranking employees for purposes of analysis under the GTLA. See *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008) (distinguishing lower-level governmental employees from high-ranking officials entitled to absolute immunity). These low-ranking employees are Lisa Anderson (the assistant superintendent of finances and operations for GLCS), Donald Eastman (the principal of Gull Lake High School), Karyn Furlong (the new athletic director for GLCS and the former high school events supervisor), and Noreen Arnold (the athletic secretary for GLCS). According to plaintiff, these individuals "rushed to judgment" based on incomplete paperwork and a "sloppy" system for accounting for the cash received at games, they participated in the investigation against him, and made statements against him that were not completely "forthright." Plaintiff maintains that this conduct amounts to gross negligence that could be considered the proximate cause of his termination and injuries.

Under the GTLA, low-ranking employees are immune from tort liability as set forth in MCL 691.1407(2), which, in relevant part, states:

> [E]ach . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of . . . while acting on behalf of a governmental agency if all of the following are met:

(a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

"'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The framework for evaluating "the proximate cause" of injury for purposes of the GTLA was recently set forth by the Michigan Supreme Court in *Ray v Swager*, __ Mich __, __: __ NW2d __ (2017). Under this framework, following a determination that the government actor was grossly negligent and that this gross negligence was a factual as well as a proximate cause of the injury, the government actor's legal responsibility must then be weighed alongside any other potential proximate causes to determine whether the government actor's actions "were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." *Id.*; slip op at 8-9, 16, 18-20, 28 (citation omitted).

In this case, plaintiff's claims of gross negligence by the low-ranking officials at GLCS are clearly without merit. These individuals simply cannot be considered grossly negligent for reporting discrepancies in the cash receipts or for cooperating in the subsequent investigation. While plaintiff vaguely asserts that they were not completely "forthright" and that they "rushed to judgment," he has not identified any conduct that rises to the level of gross negligence. Instead, plaintiff's argument suggests that these defendants should have conducted a more thorough investigation or that they should have maintained a more reliable accounting system for the cash receipts on which to base their assessment of missing monies. But, these arguments fail because simply alleging that an actor could have done more is insufficient to establish gross negligence. *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Gross negligence requires conduct that is "substantially more than negligent," and plaintiff has not presented evidence of such conduct. See *Radu v Herndon & Herndon Investigations, Inc*, 302 Mich App 363, 383; 838 NW2d 720 (2013).

Additionally, plaintiff has not shown that any action by these defendants was the proximate cause of his termination and subsequent injuries. Insofar as these defendants reported the cash discrepancies and cooperated in the investigation, they could be considered factual causes of plaintiff's termination and related injuries. Nevertheless, it was ultimately Rundle who concluded that plaintiff misappropriated funds, it was Rundle who fired plaintiff, and it was Rundle who issued the press release. Considering Rundle's authority at GLCS and the fact that Rundle made the decisions resulting in plaintiff's termination, the actions of the other individual defendants cannot be considered "the proximate cause" of plaintiff's injuries within the meaning of the GTLA. Thus, insofar as plaintiff's claims involved allegations of negligence and gross negligence, defendants Anderson, Eastman, Furlong, and Arnold were entitled to the immunity

provided by MCL 691.1407(2), and the trial court did not err by granting summary disposition to these defendants under MCR 2.116(C)(7).[4]

Affirmed. Having prevailed in full, defendants may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

---

[4] Aside from plaintiff's negligence-based claims, plaintiff's complaint contained several allegations of intentional torts. Lower-level governmental employees are also immune from intentional torts, provided that they satisfy the test in *Ross v Consumers Power Co*, 420 Mich 567; 363 NW2d 641 (1984). See *Odom*, 482 Mich at 471-476; see also MCL 691.1407(3). On appeal, plaintiff has not addressed the *Ross* test, and instead only argues that the low-ranking employees in this case are liable because their conduct amounted to gross negligence that was the proximate cause of plaintiff's injuries. As discussed, this argument is without merit. Although not discussed by plaintiff, we also note briefly that plaintiff's intentional torts against these defendants must fail because their actions were undertaken during the course of employment within the scope of their authority, the acts were undertaken in good faith without malice, and the acts were discretionary as opposed to ministerial. See *Odom*, 482 Mich at 473-476, 480.