Arla G. **TOLMAN**, Tracie Allen, Jeanette Berry, Carol Bowser, Karen Castro, Laura Cowan, Cheryl Garrison, Simin Hakimi, Francis Hiler, Suzanne Hill, Carl McGirl, Shelley Montoya, Stacey Muniz, Trace Nigh, Lisa Norton, Donna Pacheco, Louise Ragolia, Tanya Szalwinski, Sylvia Westbrook, Mary Ann From, Kara Coleman, Carlee Denton, Carmen Edge, Deborah Hosford, Shellie Wayne, Plaintiffs–Appellants,

v.

**CENCOR CAREER COLLEGES, INC.**, a division of CENCOR, INC., a Delaware corporation; and any or all successor corporations, doing business in Colorado as Colorado College of Medical and Dental Careers, Defendant–Appellee.

No. 91CA0339.

Colorado Court of Appeals, Div. II.

Sept. 24, 1992.

Rehearing Denied Nov. 27, 1992.

Certiorari Granted April 26, 1993.

Weinman, Cohen, Niebrugge & Price, George C. Price, Denver, for plaintiffs-appellants.

Cooper & Kelly, P.C., Mick T. Mihm, Sheila P. Carrigan, Denver, for defendant-appellee.

Opinion by Judge PIERCE.

Plaintiffs appeal from a summary judgment in favor of defendant, CenCor, Inc., d/b/a Colorado College of Medical and Dental Careers. We affirm in part and reverse in part, and remand for a new trial.

Plaintiffs are nineteen former students of defendant. Thirteen plaintiffs completed the course requirements and received diplomas. Of these, ten plaintiffs actively sought and found employment in their field. Six of the nineteen failed to complete the course requirements and, consequently, did not receive diplomas. However, one of these six found employment in the health care field.

In their second amended complaint, plaintiffs pursued twelve claims against defendant, seeking relief for alleged deficiencies in the education provided. Defendant moved for summary judgment based upon the pleadings, an affidavit of defendant's director, and portions of the depositions taken of plaintiffs which demonstrate their dissatisfaction with the quality of the education they received. The trial court dismissed plaintiffs' claims on defendant's motion.

## I.

Here, plaintiffs asserted five claims sounding in negligent tort. They alleged negligence from defendant's asserted failure to inform them of the education that would be provided them; they alleged negligence of a specialist, premised upon the assertion that defendant is an expert in technical education; they alleged negligence per se based upon the alleged failure of defendant to avoid false or misleading advertising statements and the alleged violation of the statute regulating private occupational schools; and, finally, plaintiffs alleged intentional infliction of emotional distress based upon defendant's alleged outrageous conduct.

In addressing these negligent tort and outrageous conduct claims, the trial court concluded that they were all premised on the existence of educational malpractice as a theory of recovery. And, based on authority from other states, the court concluded that Colorado should not create a claim for relief based upon educational malpractice and, even if one were to exist, the facts here would not support such cause of action. We agree with the trial court's analysis.

The question of the viability of an educational malpractice claim is one of first impression in Colorado. Authority from other states has consistently refused to recognize educational malpractice as a cognizable claim. *See Ross v. Creighton University,* 740 F.Supp. 1319 (N.D.Ill.1990); *Blane v. Alabama Commercial College, Inc.,* 585 So.2d 866 (Ala.1991); *Peter W. v. San Francisco Unified School District,* 131 Cal.Rptr. 854, 60 Cal.App.3d 814 (1976).

Courts generally have rejected the claim brought on any theory, although a closer question may exist when the claim sounds in contract. *See Wickstrom v. North Idaho College,* 111 Idaho 450, 725 P.2d 155 (1986); *but cf. Ross v. Creighton University, supra* (same policies which forbid the tort also forbid cause of action based upon breach of contract theory). However, some cracks are appearing in the theoretical foundations of these cases. *See* Davis, *Examining Educational Malpractice Jurisprudence: Should a Cause of Action Be Created for Student–Athletes?* 69 Den. U.L.Rev. 57 (1992).

■ Whether to create a claim for relief for educational malpractice is a question of law which, initially, requires determination by the court whether a duty runs from defendant to plaintiff. *Ross v. Creighton University, supra.* Initial resolution of the question of the existence of a duty is dictated by public policy and the conceivable workability of a rule of care in a given factual situation. *Peter W. v. San Francisco Unified School District, supra.* Relevant considerations affecting whether to impose a duty of care include the likelihood of injury to plaintiffs, the magnitude of the burden of guarding against an injury, and the consequences of placing that burden on defendant. *Ross v. Creighton University, supra.*

■ Since education is a collaborative and subjective process whose success is largely reliant on the student, and since the existence of such outside factors as a student's attitude and abilities render it impossible to establish any quality or curriculum deficiencies as a proximate cause to any injuries, we rule that there is no workable standard of care here and defendant would face an undue burden if forced to litigate its selection of curriculum and teaching methods. *Ross v. Creighton University, supra; Peter W. v. San Francisco Unified School District, supra.* Accordingly, as a matter of law, we decline to impose such a duty here and uphold the summary judgment refusing to recognize plaintiffs' tort claims premised on educational malpractice entered by the trial court.

It necessarily follows that, without a duty, there can be no heightened duty to support plaintiffs' claim of negligence of a specialist. Likewise, plaintiffs' claims of negligence per se and intentional infliction of emotional distress were properly dismissed under this same theory. In addition, the record supports the trial court's finding that the "facts presented do not support such cause of action even if one were to exist," since there is no violation of statute and no conduct by defendant that could be categorized as outrageous. *See*

*Bauer v. Southwest Denver Mental Health Center, Inc.,* 701 P.2d 114 (Colo. App.1985).

## II.

Besides the claims addressed above, plaintiffs also present claims here sounding in contract and deceit based on fraud. As to these claims, we conclude that they present factual issues that preclude disposition by summary judgment. The issue of waiver was not raised by defendant.

First, we do not agree with the rule set forth in *Ross v. Creighton University, supra,* that there are no circumstances which would warrant the application of contract and deceit law to cases filed against educational institutions, if the proper elements of breach of contract and deceit based on fraud are properly pled and proved. Such claims can be separated from claims alleging educational malpractice torts.

Plaintiffs here generally alleged that defendant misrepresented the promised curriculum. Also, they alleged, as pertinent here, that defendant misrepresented the quality of the equipment and faculty in order to induce enrollment, provided inadequate assistance to plaintiffs in finding employment, and misrepresented the placement rate of graduates. They further asserted that, in general, the services provided were "grossly inadequate" and "inferior" to what they had expected based on defendant's advertising and representations.

Plaintiffs' contract claims allege defendant's breach of express warranties such as a high placement rate of 95%, use of "modern" equipment, and other "specific promises related to the quality of the school." They also assert breach of contract as set forth in the enrollment agreement incorporating the school's catalog stemming from defendant's failure to deliver the educational experience as promised therein. Finally, they assert the equitable claims of unjust enrichment and promissory estoppel, and allege misrepresentation and concealment of material facts. *See Forsyth v. Associated Grocers of Colorado,* 724 P.2d 1360 (Colo.App.1986).

Examples of facts alleged to prove these claims appear in the depositions submitted with the summary judgment documents. For instance, plaintiffs allege that they had to learn on defective and sometimes broken equipment, that the x-ray machine was so inadequate and obsolete that they had to add numerical figures to their problems to get the right answer.

Plaintiffs also allege that they had been promised a learning experience on modern equipment. While some argument is made that "modern" is too nebulous a term to bear contractual responsibility, we do not believe it is under the actual allegations set forth in these depositions. *See Tennant Land Co. v. Nordeman,* 148 Ky. 361, 146 S.W. 756 (1912).

Modern, as used in the context of this case, means "produced by or embodying the most recent techniques, methods, or ideas; up to date." *Webster's Third New International Dictionary* 1452. Factual questions were raised here as to whether many items of teaching equipment were "modern."

There are other factual assertions that the x-ray machine was broken, that the rubber clamps used in connection with it were broken, and that there were no pedodontic clamps.

Hence, these and other statements appearing in the depositions and denied by defendant set up factual disputes that cannot properly be resolved by summary judgment. *See Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

Therefore, that part of the summary judgment dismissing the tort claims founded on the theory of educational malpractice is affirmed. That part of the summary judgment dismissing the contract claims and claims premised on fraud and deceit is reversed, and the cause is remanded for a trial on those issues.

REED and RULAND, JJ., concur.