PAGE v KLEIN TOOLS, INC

Docket No. 112464. Argued December 8, 1999 (Calendar No. 4). Decided April 25, 2000.

Kenneth Page brought an action in the Gratiot Circuit Court against American Line Builders Apprenticeship Training Program (ALBAT) alleging that ALBAT was negligent in supplying inappropriate utility pole climbing equipment and in failing to provide adequate instructions, education, and warning regarding pole climbing, and that it breached express or implied warranties by selling him equipment that was improperly designed, manufactured, and sold without adequate warnings and instructions and without independent fall arrest equipment. Mr. Page had completed a three-week course provided by ALBAT in which he was taught methods of climbing wooden utility poles. He later was injured when he fell from a utility pole on which he was working. The court, Randy L. Tahvonen, J., granted summary disposition for ALBAT. The Court of Appeals, GRIBBS, P.J., and MURPHY, J. (GAGE, J., concurring in part and dissenting in part), in an unpublished opinion per curiam, citing *Antcliff v State Employees Credit Union*, 414 Mich 624 (1982), held that the trial court properly dismissed the plaintiff's products liability claim because ALBAT had no duty to instruct or warn that the pole strap it sold to the plaintiff as a component part would be safer if used in conjunction with fall arrest equipment. However, it reversed the dismissal of the plaintiff's claim that ALBAT was negligent for failing to provide adequate instruction regarding utility pole climbing. Although the Court stated that it recognized that claims of so-called educational malpractice are widely disfavored, it believed plaintiff's claim to be one of simple negligence (Docket No. 200788). ALBAT appeals.

In an opinion by Justice YOUNG, joined by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, and MARKMAN, the Supreme Court *held*:

Claims alleging negligent instruction, whether brought against public schools, institutions of higher learning, or private proprietary and trade schools, are not cognizable in Michigan.

1. The rationale for declining to recognize claims of teacher malpractice stems from the collaborative nature of the teaching pro-

cess. For a positive result to obtain, both teacher and student must work together. The ultimate responsibility for what is learned, however, remains with the student, and many considerations, beyond teacher misfeasance, can be factored into whether a student receives the intended message. Further, teaching methods vary, and what is considered appropriate by some, may be considered inappropriate by others. Because both the educational process and the result are subjective, there exists a practical impossibility of proving whether the alleged malpractice caused the alleged injury.

2. Even if the harm appears to flow from the alleged malpractice, recovery may sometimes be denied on grounds of public policy because the injury is too remote from the negligence, it is too wholly out of proportion to the culpability of the negligent tortfeasor, in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, allowance of recovery would place too unreasonable a burden on the defendant, or allowance of recovery would be too likely to open the way for fraudulent claims or would enter a field that has no sensible or just stopping point.

3. In this case, the plaintiff's claim, properly characterized, is one of educational malpractice. Because the claim is legally deficient, it was properly dismissed under MCR 2.116(C)(8). It illustrates the inherent difficulty of attempting to define the applicable standard of care in these types of cases. It would be practically impossible to determine the precise scope of ALBAT's undertaking or how much ALBAT was required to teach. Moreover, any connection between the plaintiff's injury and the alleged negligence on the part of ALBAT is remote at best. Even assuming that ALBAT was found to have breached a duty to teach the plaintiff every available method of pole climbing, a jury could only speculate about whether such negligence was a proximate cause of the plaintiff's fall and resulting injury. The plaintiff's injury was far removed in time and place from ALBAT's three-week course, and ALBAT was not in a position to ensure that the plaintiff would make proper use of the instruction he received. Allowing individuals such as the plaintiff to assert claims of negligent instruction would avoid the practical reality that, in the end, it is the student who is responsible for his knowledge, including the limits of that knowledge.

Reversed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the plaintiff's complaint establishes a prima facie negligence claim, and should be heard by a jury. His negligence claim is distinct from a claim for educational malpractice and, thus, should not be fore-

closed by the application of a doctrine prohibiting claims of educational malpractice.

The plaintiff has made a distinct claim of negligence that does not fall within the disfavored realm of educational malpractice. Negligence is conduct involving an unreasonable risk of harm. A prima facie claim of negligence contains a sufficient allegation that the defendant was negligent, the defendant owed a legal duty to the plaintiff, the defendant breached that duty, the plaintiff suffered harm, and the defendant's breach was the proximate cause of the plaintiff's harm. In educational malpractice cases the claim is simply that the educational institution failed to provide a quality education or that it used improper materials or techniques to teach children. The rationale for rejecting such claims rests on policy reasons not implicated in this case.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Robert H. Darling*), for the plaintiff-appellee.

*O'Neill, Wallace & Doyle, P.C.* (by *David A. Wallace* and *John J. Danieleski, Jr.*), for the defendant-appellant.

YOUNG, J. Plaintiff Kenneth Page completed a three-week course provided by defendant American Line Builders Apprenticeship Training Program (ALBAT) in which he was taught methods of climbing wooden utility poles. He later was injured when he fell from a utility pole on which he was working. He subsequently brought suit against defendant.

We granted leave in this case to determine whether plaintiff may assert a claim that defendant was negligent in failing to instruct him how to climb safely. We hold that plaintiff's allegations amount to a claim of "educational malpractice," which we decline to recognize. Accordingly, we reverse the decision of the Court of Appeals on this issue.

I. FACTUAL AND PROCEDURAL BACKGROUND

In February 1993, plaintiff attended a three-week class provided by ALBAT in which he was instructed regarding how to climb a wooden utility pole using equipment designed for that purpose. At the end of the course, plaintiff purchased from ALBAT the equipment that he had used during the course. This equipment consisted of a body belt, gaffs, and a pole strap. The body belt is a leather belt designed for holding tools. It also has metal "D" rings to which the pole strap can be connected. The pole strap is designed to go around the pole and attach to the climber's body belt. The pole strap supports the climber when he leans backward. Gaffs are spikes that are strapped to the climber's legs to aid in climbing.

Shortly after completing the three-week climbing course, plaintiff was hired by the Hydaker-Wheatlake Company as an apprentice linesman. On April 3, 1993, plaintiff was working on a utility pole in Alma, Michigan. While in the process of descending the pole, he fell to the ground from a height of sixty feet, receiving serious injuries. In his deposition, plaintiff acknowledged that he does not remember anything about the fall or exactly how it happened. However, it apparently is undisputed that, at the time of his fall, he had disconnected his pole strap in order to maneuver around a "cross bar" that extended from the pole. There also is no dispute that the applicable climbing method taught by ALBAT involved the climber unhooking his pole strap from the "D" ring on his body belt, moving past the obstacle, and then rehooking the strap around the pole.

Plaintiff subsequently filed suit against ALBAT, among others. Plaintiff's first amended complaint set forth two counts against ALBAT, which significantly overlapped. Count III, labeled "Negligence," alleged in relevant part that ALBAT was negligent in supplying inappropriate climbing equipment and also in failing to provide adequate instructions, education, and warning regarding pole climbing.

Count IV was labeled "Breach of Implied Warranty." It alleged that ALBAT breached express or implied warranties by selling plaintiff equipment that was improperly designed, manufactured, and sold, that was supplied without adequate warnings and instructions, and that was supplied without independent fall arrest equipment.[1]

ALBAT moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that it had no duty to supply plaintiff with additional equipment. ALBAT further argued that plaintiff's claim that it failed to provide adequate instruction regarding pole climbing was a claim for educational malpractice that, according to *Nalepa v Plymouth-Canton Community School Dist,* 207 Mich App 580; 525 NW2d 897 (1994), was not a recognized cause of action in Michigan. The trial court granted the motion and dismissed plaintiff's complaint against ALBAT.

The Court of Appeals, in a split opinion,[2] affirmed in part, reversed in part, and remanded. Citing *Antcliff v State Employees Credit Union,* 414 Mich 624, 639-640; 327 NW2d 814 (1982), the Court held that

---

[1] Fall arrest equipment, consisting primarily of a harness and lanyard, remains anchored to the pole itself to prevent a fall.

[2] Unpublished opinion per curiam, issued June 5, 1998 (Docket No. 200788).

the trial court properly dismissed plaintiff's claim
sounding in products liability because ALBAT had no
duty to instruct or warn that the pole strap it sold to
plaintiff as a component part would be safer if used
in conjunction with fall arrest equipment.[3]

However, the Court reversed the trial court's deci-
sion, dismissing plaintiff's claim that ALBAT was negli-
gent for failing to provide adequate instruction
regarding utility pole climbing. Although the Court of
Appeals majority recognized that claims of so-called
"educational malpractice" are widely disfavored, it
believed plaintiff's claim to be one of "simple neg-
ligence":

> This is not a case in which a plaintiff has alleged a failure
> in the overall educational program of an educational entity.
> Plaintiff is not asking the court to interfere with the purely
> academic decisions of an educational entity, to make judg-
> ments about the quality of broad educational policies, or to
> evaluate the overall quality of his education. Instead, plain-
> tiff has made a very precise claim against a commercial
> vocational training entity based upon that entity's alleged
> failure to instruct him on the proper methods and tech-
> niques of maneuvering around an obstacle on a utility
> pole . . . .

Judge GAGE dissented. She argued that plaintiff
"alleges failure to adequately instruct him on proce-
dure and safety" and that such claims "lie within the
area recognized as educational malpractice."

---

[3] The Court characterized plaintiff's products liability claim as encom-
passing his allegations "that the equipment was improperly designed and
manufactured, that defendant sold the equipment without adequate warn-
ings and instructions, and that defendant failed to supply the equipment
with a fall arrest system which is designed to suspend a worker in the air
in the event of a fall."

We granted defendant's application for leave to appeal. 460 Mich 851 (1999).

## II. STANDARD OF REVIEW

The central issue in this case is one of law: whether claims sounding in educational malpractice should be recognized in Michigan. We decide questions of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

## III. ANALYSIS

As an initial matter, we wish to emphasize what our decision in this case does *not* address. In his appellate brief, plaintiff argues that ALBAT had a duty arising out of the *sale of the climbing equipment* to ensure that he was thoroughly versed in all the uses and limitations of that equipment. The problem with that theory, however, is that it was already rejected by the Court of Appeals when it affirmed the trial court's decision granting summary disposition to ALBAT on plaintiff's claim "sounding in products liability." Whatever the merits of that decision, we denied plaintiff's cross-application for leave to appeal. 460 Mich 851 (1999).[4] Accordingly, the only issue that is now before us involves plaintiff's alternate claim that, by offering the three-week course that plaintiff at-

---

[4] Despite this fact, the dissent repeatedly relies on plaintiff's allegations grounded in products liability. For example, the dissent, *post* at 728, argues that ALBAT "had a duty to instruct plaintiff in the proper manner of climbing poles and using the equipment it provided him." As explained below, to the extent plaintiff is stating a negligence claim arising out of the sale of the climbing equipment, it is not properly before us.

tended, ALBAT assumed a duty to teach him the fundamentals of pole climbing and that it was negligent in failing to instruct him about how to do so safely.[5]

## A. EDUCATIONAL MALPRACTICE DEFINED

*Peter W v San Francisco Unified School Dist,* 60 Cal App 3d 814; 131 Cal Rptr 854 (1976), is considered to be the seminal case in the area of so-called "educational malpractice." There, the eighteen-year-old plaintiff sued his school district for, among other things, negligently failing to teach him "basic academic skills such as reading and writing." *Id.* at 818. Refusing to recognize a cause of action for what it characterized as "educational malfeasance," the California court reasoned:

> On occasions when the Supreme Court has opened or sanctioned new areas of tort liability, it has noted that the wrongs and injuries involved were both comprehensible and assessable within the existing judicial framework. . . . This is simply not true of wrongful conduct and injuries allegedly involved in educational malfeasance. Unlike the activity of the highway or the marketplace, classroom methodology affords no readily acceptable standards of care, or cause, or injury. The science of pedagogy itself is fraught with different and conflicting theories of how or what a child should be taught, and any layman might—and commonly does—have his own emphatic views on the subject. The "injury" claimed here is plaintiff's inability to read and

---

[5] We note that, throughout the proceedings below, plaintiff has consistently articulated two separate theories of liability, one of which was grounded in products liability. As stated, that theory was rejected by both the trial court and the Court of Appeals, and we denied leave to appeal. Plaintiff's alternate theory consistently has been that ALBAT, for a fee, offered to instruct him regarding how to climb utility poles, and that it was negligent in failing to provide accurate and adequate instruction. It is that theory of liability that we address today.

write. Substantial professional authority attests that the achievement of literacy in the schools, or its failure, are influenced by a host of factors which affect the pupil subjectively, from outside the formal teaching process, and beyond the control of its ministers. They may be physical, neurological, emotional, cultural, environmental; they may be present but not perceived, recognized but not identified.

We find in this situation no conceivable "workability of a rule of care" against which defendants' alleged conduct may be measured . . . , no reasonable "degree of certainty that . . . plaintiff suffered injury" within the meaning of the law of negligence . . . , and no such perceptible "connection between the defendant's conduct and the injury suffered," as alleged, which would establish a causal link between them within the same meaning. [*Id.* at 824-825 (citations omitted).]

*Peter W* represents the "classic" case of educational malpractice in which a public school is alleged to have failed to adequately instruct a student in basic academic skills. Such claims, including those directed at institutions of higher learning, are uniformly disfavored.[6] Courts have also considered and rejected educational malpractice claims arising out of an alleged misdiagnosis of learning disabilities.[7]

---

[6] See, e.g., *Bell v Westhaven Bd of Ed*, 55 Conn App 200; 739 A2d 321 (1999); *Ross v Creighton Univ*, 957 F2d 410 (CA 7, 1992) (applying Illinois law); *Wickstrom v North Idaho College*, 111 Idaho 450; 725 P2d 155 (1986); *Swidryk v Saint Michael's Medical Center*, 201 NJ Super 601; 493 A2d 641 (1985); *Donohue v Copiague Union Free School Dist*, 47 NY2d 440; 418 NYS2d 375; 391 NE2d 1352 (1979); see also generally anno: *Tort liability of public schools and institutions of higher learning for educational malpractice*, 1 ALR4th 1139.

[7] See, e.g., *Brantley v Dist of Columbia*, 640 A2d 181 (DC, 1994); *Suriano v Hyde Park Central School Dist*, 203 AD2d 553; 611 NYS2d 20 (1994); *Doe v Montgomery Co Bd of Ed*, 295 Md 67; 453 A2d 814 (1982); *DSW v Fairbanks North Star Borough School Dist*, 628 P2d 554 (Alas, 1981).

Various public policy grounds have been advanced by those courts that have refused to recognize claims of educational malpractice, including:

> (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools." [*Alsides v Brown Institute, Ltd*, 592 NW2d 468, 472 (Minn App, 1999) (citation omitted).]

These and other related public policy grounds have also been cited by various courts that have declined to impose liability on proprietary and trade schools for educational malpractice. In *Cavaliere v Duff's Business Inst*, 413 Pa Super 357; 605 A2d 397 (1992), the Pennsylvania court upheld the dismissal of the plaintiffs' claim for educational malpractice brought against a court reporting school. The court explained:

> The concerns that are clearly appropriate in the case of an academic institution are equally raised by an attempt to inquire into the sufficiency of teaching methods at a trade or business school like the Institute. This court would be hard pressed to determine which of several alternative methods of teaching court reporting, or auto repair, or any other specialized business or trade skill was the appropriate one. Nor would it be an easy task to determine why a particular student failed to acquire certain skills after pursuing a course of instruction aimed at teaching those skills. [*Id.* at 369.]

Similarly, in *Tolman v CenCor Career Colleges, Inc*, 851 P2d 203 (Colo App, 1992), aff'd 868 P2d 396

(Colo, 1994), the Colorado court upheld the dismissal of educational malpractice claims brought by nineteen former students of a vocational school for medical and dental assistants. The court relied on the following public policy rationale:

> Since education is a collaborative and subjective process whose success is largely reliant on the student, and since the existence of such outside factors as a student's attitude and abilities render it impossible to establish any quality or curriculum deficiencies as a proximate cause to any injuries, we rule that there is no workable standard of care here and defendant would face an undue burden if forced to litigate its selection of curriculum and teaching methods. [*Id.* at 205.]

### B. VIABILITY OF EDUCATIONAL MALPRACTICE CLAIMS IN MICHIGAN

Our own Court of Appeals has also considered and rejected claims of educational malpractice. In *Johnson v Clark*, 165 Mich App 366, 367; 418 NW2d 466 (1987), the plaintiff, who had dyslexia and, as a high school graduate, could only read at the fourth-grade level, sued his teachers and the school psychologist, principal, and administrator, alleging that the "defendants' failure to properly perform annual tests and evaluations required by . . . statute and regulations promulgated thereunder resulted in plaintiff's failure to learn that he suffered from dyslexia." The Court of Appeals affirmed the trial court's grant of summary disposition in favor of the defendants on the ground that there was no common-law duty requiring teachers to properly test and evaluate special education students. *Id.* at 370.

In *Nalepa, supra* at 583, aff'd on other grounds 450 Mich 934 (1995),[8] the plaintiffs' second-grade son committed suicide after viewing a movie at school in which a young boy attempts suicide by hanging himself. The plaintiffs' son hanged himself by a belt from the safety rail of the upper bunk bed in his bedroom. The plaintiffs sued various teachers and counselors, among others, alleging that they were negligent in showing such a film to second-graders. Dismissing the plaintiffs' complaint, the Court of Appeals held that "allegations that teachers and faculty used improper materials and techniques to teach children amount to claims of teacher malpractice." *Id.* at 594. The Court cited *Johnson* for the proposition that a teacher's common-law liability for a student's injuries caused by the teacher "does not extend to educational malpractice." *Id.*

In reaching its decision, the *Nalepa* Court relied on the same public policy grounds commonly cited by those courts that have refused to recognized claims of educational malpractice. The Court explained:

> The rationale for declining to recognize claims of teacher malpractice stems from the collaborative nature of the teaching process. See *Ross v Creighton Univ*, 740 F Supp 1319, 1328 (ND Ill, 1990), aff'd in part and rev'd and remanded in part on other grounds 957 F2d 410 (CA 7, 1992). For a positive result to obtain, both teacher and student must work together. The ultimate responsibility for what is learned, however, remains with the student, and many considerations, beyond teacher misfeasance, can factor into whether a student receives the intended message.

---

[8] This Court affirmed the Court of Appeals decision on the ground that it reached the right result. However, we indicated that "[t]his action should not be construed as indicating our agreement with the reasoning set forth in the Court of Appeals opinion." 450 Mich 934 (1995).

*Id.* Further, teaching methods vary, and what is considered appropriate by some, may be considered inappropriate by others. Thus, because both the educational process and the result are subjective, there exists a practical impossibility of proving whether the alleged malpractice caused the complained-of injury. *Id.* [*Id.* at 594-595.]

The Court also found several other "policy considerations" to be applicable:

Even if the harm appears to flow from the alleged malpractice, for public policy reasons, we would still decline to recognize a duty. We agree with the Supreme Court of Wisconsin's statement in another educational malpractice case:

"Even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden [on the defendant]; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." [*Wilson v Continental Ins Cos*, 87 Wis 2d 310, 323-324; 274 NW2d 679 (1979), quoting *Rieck v Medical Protective Co*, 64 Wis 2d 514, 517-518; 219 NW2d 242 (1974).] [*Id.* at 595.]

We agree with and adopt as our own the reasoning employed by those courts that have declined to recognize a cause of action for educational malpractice, whether those claims are brought against public schools, institutions of higher learning, or private proprietary and trade schools. We therefore hold that claims sounding in educational malpractice, that is,

claims alleging negligent instruction, are not cognizable in Michigan.

As stated, the essence of plaintiff's claim is that, by offering the three-week course that he attended, ALBAT assumed a duty to teach him the fundamentals of pole climbing and that it was negligent in failing to instruct plaintiff regarding how to do so safely. Plaintiff maintains that climbing with a pole strap alone is unsafe and that ALBAT should also have instructed him regarding the use of independent fall arrest equipment. We conclude that plaintiff's claim, properly characterized, is one of educational malpractice. Because plaintiff's claim is legally deficient, it was properly dismissed under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted).

Plaintiff would have the courts second-guess ALBAT's decision to teach pole climbing using the particular methods it chose. However, plaintiff's claim illustrates the inherent difficulty in attempting to define the applicable standard of care in these types of cases. Plaintiff argues that ALBAT was negligent because it failed to instruct him that he should not climb utility poles without using fall arrest equipment. ALBAT, on the other hand, argues that it had no responsibility to do so.[9] We decline to become em-

---

[9] In support of that argument, ALBAT points out that not even the federal Occupational Safety and Health Administration (OSHA) requires the unconditional use of fall protection equipment. The pertinent OSHA regulation provides:

broiled in the task of determining whether a trade school such as ALBAT should be held liable in tort for failing to teach specific methods of climbing. It would be practically impossible to determine the precise scope of ALBAT's undertaking. How much was ALBAT required to teach?

Moreover, as is typical in educational malpractice cases, any connection between plaintiff's injury and the alleged negligence on the part of ALBAT is remote at best. Even assuming that ALBAT was found to have breached a duty to teach plaintiff every available method of pole climbing, a jury could only speculate about whether such negligence was a proximate cause of plaintiff's fall and resulting injury. Plaintiff's injury was far removed in time and place from ALBAT's three-week course. Indeed, plaintiff was subsequently hired by the Hydaker-Wheatlake Company to perform work on utility poles. Hydaker-Wheatlake, in turn, presumably exercised independent judgment regarding plaintiff's abilities. In any event, ALBAT certainly was not in a position to ensure that plaintiff would make proper use of the instruction he received. Allowing individuals such as plaintiff to assert claims of negligent instruction would avoid the practical reality that, in the end, it is the student who is responsible for his knowledge, including the limits of that knowledge.

---

Fall protection equipment is not required to be used by a qualified employee climbing or changing location on poles, towers, or similar structures, unless conditions, such as, but not limited to, ice, high winds, the design of the structure (for example, no provision for holding on with hands), or the presence of contaminants on the structure, could cause the employee to lose his or her grip or footing. [29 CFR 1910.269(g)(2)(v).]

IV. CONCLUSION

For all the reasons stated, we hold that claims alleging negligent instruction, whether those claims are brought against public schools, institutions of higher learning, or private proprietary and trade schools, are not cognizable in Michigan. We therefore reverse the decision of the Court of Appeals and reinstate the trial court's decision granting summary disposition to ALBAT.

WEAVER, C.J., and TAYLOR, CORRIGAN, and MARKMAN, JJ., concurred with YOUNG, J.

KELLY, J. (*dissenting*). The majority classifies plaintiff's claim as one sounding in educational malpractice. It then determines that Michigan does not recognize such a claim. Accordingly, it dismisses the appeal.

I disagree that plaintiff's claim is for educational malpractice. Therefore, I find it unnecessary to reach the issue whether Michigan recognizes an action for educational malpractice. I would affirm the decision of the Court of Appeals and remand this case for further proceedings on plaintiff's negligence claim.

I. BACKGROUND

I accept the factual and procedural background provided in the majority opinion. My focus is on the negligence count contained in plaintiff's first amended complaint. There, plaintiff stated his complaint against defendant American Line Builders Apprenticeship Training Program (ALBAT) as follows:

COUNT III

NEGLIGENCE - AMERICAN LINE BUILDERS

\*    \*    \*

41. That Defendant, American Line Builders, supplied the subject matter lineman's system along with instructions as the methods and equipment to be used in pole climbing.

42. That Defendant, American Line Builders, owed Plaintiff, Kenneth Page, a duty to exercise reasonable care under the circumstances.

43. That Defendant, American Line Builders, owed to the Plaintiff, Kenneth Page, and [sic] was negligent in the following particulars including, but not limited to:

a. supplying equipment that had been recalled by the manufacturer

b. failing to inform Plaintiff the subject matter lineman's system had been recalled;

c. supplying inappropriate equipment for a lineman's system;

d. failing to provide adequate instruction and warning regarding pole climbing;

e. selecting unsafe lineman's systems for supply to others;

f. recommending, demonstrating and supplying inappropriately designed, manufactured, assembled, and tested lineman's systems;

g. recommending, demonstrating and supplying lineman's systems which were not equipped with component parts in accordance with prevailing industry standards;

h. failing to provide adequate instructions and education regarding pole climbing;

\*    \*    \*

44. That Defendant American Line Builders negligence was jointly and severally a proximate cause of Plaintiff's injuries and damages.

The Court of Appeals affirmed the trial court's decision, denying ALBAT's motion for summary disposition

on plaintiff's negligence claim. It identified plaintiff's claim as

> a very precise claim against a commercial vocational training entity based upon that entity's alleged failure to instruct him on the proper methods and techniques of maneuvering around an obstacle on a utility pole . . . with equipment sold to him by defendant. Plaintiff testified that the manner in which he attempted to negotiate the obstacle was the only method taught to him by defendant, and plaintiff's expert testified that plaintiff should have been instructed in the use of a second pole strap, which would have prevented the accident. In short, plaintiff has made a claim sounding in simple negligence, not educational malpractice, in which plaintiff must prove duty, breach of duty, proximate cause, and damages. The public policy considerations that have caused courts to conclude that educational malpractice claims are not cognizable are absent in this case.

In plaintiff's answer to ALBAT's application for leave to appeal to this Court, plaintiff explained his negligence count against ALBAT as follows:

> Michigan law recognizes that accompanying every contract is a common law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract. *Clark v Dalman*, 379 Mich 251, 261 [150 NW2d 755] (1967). Here Plaintiff contracted with ALBAT to provide him with the fundamentals of working as a lineman, not least of which encompassed learning how to climb and descend telephone poles safely. Defendant had a duty to use due care in performing their [sic] obligations under this contract. Defendant, under these arrangements, should not be allowed to later claim that its negligent performance of its duties, its failure to properly instruct how to climb poles or use equipment, is shielded from liability under the rubric of "educational malpractice." Defendant's activities here are far removed from the type of curriculum decision making and

professional guidance that this doctrine was intended to protect.

\*    \*    \*

Plaintiff makes a precise claim that Defendant failed to properly instruct him in the use of equipment it sold to him. This claim is one of simple negligence . . . .

\*    \*    \*

Our negligence claim against Defendant relates to the specific equipment Defendant sold to Plaintiff and how Plaintiff was instructed to use this equipment. . . . The information conveyed by Defendant about the use of the equipment Defendant supplied to Plaintiff was wrong, and it is that information which forms the basis of Plaintiff's negligence complaint.

Finally, at oral argument before this Court, plaintiff stated he was

not looking at or criticizing what was or was not done with regard to training but what was or was not done in relation to the supply of equipment given the fact that at the very least indicating that the training that they provided violated the manufacturer's instructions.

Our review of the Court of Appeals decision on a trial court's grant of summary disposition is de novo. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). "Because we are reviewing a summary disposition in favor of the defendant, we accept as true the plaintiffs' allegations." *Hartford Accident & Indemnity Co v Used Car Factory, Inc,* 461 Mich 210, 212, n 2; 600 NW2d 630 (1999).

## II. ANALYSIS

I agree with the Court of Appeals that plaintiff has made a distinct claim of negligence that does not fall within the disfavored realm of educational malpractice.[1] "[N]egligence is conduct involving an unreasonable risk of harm." *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993). A prima facie claim of negligence contains a sufficient allegation that (1) the defendant was negligent, (2) the defendant owed a legal duty to the plaintiff, (3) the defendant breached that duty, (4) the plaintiff suffered harm, and (5) the defendant's breach was the proximate cause of the plaintiff's harm. *Id.* at 449.

A

In educational malpractice cases the claim is simply that the educational institution failed to provide a quality education[2] or that it used improper materials

---

[1] The majority states that I rely on plaintiff's allegations grounded in products liability to sustain plaintiff's complaint. I disagree. The trial court dismissed plaintiff's products liability count. The Court of Appeals affirmed, holding that ALBAT had no duty to warn or instruct plaintiff to use a component part in connection with the equipment it provided to him.

Plaintiff's negligence count alleges that ALBAT did not exercise reasonable care in training him how to climb poles. In order to train someone to climb poles, it is necessary to instruct in the use of pole climbing equipment. Independent of whether ALBAT had a duty to warn or instruct plaintiff on the use of additional safety equipment, ALBAT had another duty. It was to properly instruct plaintiff how to use the equipment needed to climb poles. See p 729. Plaintiff's negligence claim addresses that duty. Thus, it is distinct from his products liability count.

[2] The plaintiff alleged that the public school failed to provide adequate instruction to the plaintiff in basic academic skills in *Cavaliere v Duff's Business Inst*, 413 Pa Super 357, 370; 605 A2d 397 (1992); see also *Peter W v San Francisco Unified School Dist*, 60 Cal App 3d 814; 131 Cal Rptr 854 (1976). The plaintiff alleged that there were deficiencies in the education provided by the defendant trade school in *Tolman v CenCor Career Colleges, Inc*, 851 P2d 203 (Colo App, 1992). The plaintiff alleged that the public school failed to properly test and evaluate for learning disabilities in *Johnson v Clark*, 165 Mich App 366, 367; 418 NW2d 466 (1987).

or techniques to teach children. *Nalepa v Plymouth-
Canton Community School Dist*, 207 Mich App 580,
594; 525 NW2d 897 (1994). The rationale for rejecting
such claims rests on policy reasons not implicated
here.

The majority quotes *Alsides v Brown Institute,
Ltd*,[3] to provide four policy reasons for rejecting edu-
cational malpractice cases:

> (1) the lack of a satisfactory standard of care by which to
> evaluate an educator; (2) the inherent uncertainties about
> causation and the nature of damages in light of such inter-
> vening factors as a student's attitude, motivation, tempera-
> ment, past experience, and home environment; (3) the
> potential for a flood of litigation against schools; and (4)
> the possibility that such claims will "embroil the courts into
> overseeing the day-to-day operations of schools."

The policy reasons cited in *Alsides* are not implicated
here. First, there is a standard of care by which to
evaluate the instruction plaintiff received. Plaintiff
was taught a particular skill that utilized equipment
ALBAT provided to him. The manufacturer of the equip-
ment wrote instructions telling how the equipment
safely could be used. Thus, the manufacturer could
testify at trial whether the instruction given was accu-
rate. Furthermore, experienced users of the equip-
ment are available to testify whether the method
taught by ALBAT was proper. Because such testimony
is not ordinarily available in a traditional educational
setting, it is difficult to establish a standard of care
there.

In this case, by contrast, that testimony is available
for a jury to consider. Hence, it can determine

---

[3] 592 NW2d 468, 472 (Minn App, 1999).

whether ALBAT's instruction was reasonable in light of the standard of care provided by users and the manufacturer of pole climbing equipment.[4]

Second, causation can be established under the facts of this case. Plaintiff alleged that, when he fell, he was following ALBAT's instructions for maneuvering around an obstacle. He did not allege that ALBAT failed to properly teach him the method it advocated. Rather, he alleged that he learned ALBAT's technique, followed it, and was injured because the technique ALBAT taught was wrong. There is no need to evaluate plaintiff's "attitude, motivation, temperament, past experience, [or] home environment" in order to determine why plaintiff did not learn what he was taught. Plaintiff did learn what he was taught. He has alleged that what he was taught was wrong.

Plaintiff claimed that "at the time of the incident, [he] was descending the utility pole with equipment in the manner prescribed by [ALBAT] and, in the process of descending around the cross-arms, sustained serious and permanent injuries." Thus, accepting plaintiff's allegation as true, but for ALBAT's improper instructions, plaintiff would not have fallen. On remand, ALBAT would be free to introduce testimony or evidence that plaintiff was not following the technique that he was taught. At this time there is no indi-

---

[4] Courts have not uniformly found it impractical to define a standard of care for educational institutions. In *Brigham Young Univ v Lillywhite*, 118 F2d 836 (CA 10, 1941), the court held admissible the testimony of two instructors. It concerned the practices they used in their classrooms for purposes of determining whether the instructor in the case had exercised reasonable care in supervising chemical experiments. See also *Kirchner v Yale Univ*, 150 Conn 623, 627; 192 A2d 641 (1963), in which the court held that it was the obligation of the defendant school to exercise reasonable care to instruct its students in the safe and proper operation of woodworking equipment entrusted to their use as part of a class.

cation in the record of any intervening causes that would supersede ALBAT's alleged negligence.

Third, there is no danger of a flood of litigation against schools as a result of a remand in this case. The allegation here is not a simple one concerning the quality of education received. Instead, plaintiff makes a specific claim regarding instruction about how to climb poles using a particular piece of equipment that ALBAT provided him. There are standards by which ALBAT's instruction can be gauged. See p 723. Thus, this case is distinct from the type of educational malpractice case that could result in a flood of litigation.

Fourth, there is no danger that allowing this case to proceed will result in courts becoming embroiled in overseeing the day-to-day operations of schools. On remand, a jury would consider whether the method taught by ALBAT for using the pole climbing equipment was consistent with the manufacturer's instructions and the experience of users. There would be no need for a court to engage itself in independently overseeing the operation of the school.

The majority cites *Cavaliere v Duff's Business Inst*, 413 Pa Super 357, 369; 605 A2d 397 (1992), in which that court applied policy reasons similar to those referenced above to preclude an action for educational malpractice against a court-reporting school:

> The concerns that are clearly appropriate in the case of an academic institution are equally raised by an attempt to inquire into the sufficiency of teaching methods at a trade or business school like the Institute. This court would be hard pressed to determine which of several alternative methods of teaching court reporting, or auto repair, or any other specialized business or trade skill was the appropriate

one. Nor would it be an easy task to determine why a particular student failed to acquire certain skills after pursuing a course of instruction aimed at teaching those skills.

The policy reasons cited by the *Cavaliere* court, similar to those cited by the *Alsides* court, are not implicated here. This case involves teaching a student how to use a particular piece of equipment and is distinct from a case involving general instruction. A jury has a standard of care to use in determining whether what was taught was reasonable. Accordingly, it would not be "hard pressed" to determine whether the method taught by ALBAT was reasonable.

Furthermore, there is no reason why one would have to inquire why plaintiff did not acquire certain skills. Plaintiff is not alleging that he failed to acquire the skills that ALBAT purported to teach.[5]

Finally, the majority also refers to the policy reasons cited by our Court of Appeals in *Nalepa, supra* at 594-595, to support its holding that plaintiff cannot sustain his case in Michigan:

> The rationale for declining to recognize claims of teacher malpractice stems from the collaborative nature of the teaching process. For a positive result to obtain, both teacher and student must work together. The ultimate responsibility for what is learned, however, remains with the student, and many considerations beyond teacher misfeasance, can factor into whether a student receives the intended message. Further, teaching methods vary, and what is considered appropriate by some, may be considered inappropriate by others. Thus, because both the educational process and the result are subjective, there exists a practi-

---

[5] The majority also cites *Tolman*, n 2 *supra*, in which that court provides similar policy reasons for dismissing plaintiff's educational malpractice suit. As I have already discussed those reasons above, I see no reason to address the *Tolman* case in detail.

cal impossibility of proving whether the alleged malpractice caused the complained-of injury.

Even if the harm appears to flow from the alleged malpractice, for public policy reasons, we would still decline to recognize a duty. We agree with the Supreme Court of Wisconsin's statement in another educational malpractice case:

"Even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden [on the defendant]; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." [Citations omitted.]

I will address each of those policy rationales in turn and show that, like those cited by the courts in *Alsides* and *Cavaliere,* this case does not implicate them.

First, in this case the injury is not too remote from ALBAT's alleged negligent pole climbing instruction. Plaintiff allegedly fell while following ALBAT's training method. Plaintiff's injury is a normal consequence of the situation created by ALBAT's alleged improper instruction. Thus, the injury should have been foreseeable to ALBAT and was not too remote from ALBAT's conduct to be actionable. See *Moning v Alfono,* 400 Mich 425, 442; 254 NW2d 759 (1977).

Second, the injury is not out of proportion to the culpability of ALBAT. A duty to exercise reasonable care arises when it is foreseeable that an actor's conduct may create a risk of harm to the victim. See *Schultz, supra* at 451-452; *Moning, supra* at 439.

Here, it was foreseeable that defendant's alleged failure to properly instruct plaintiff could result in plaintiff falling and suffering injuries. Thus, ALBAT had a duty to instruct plaintiff in the proper manner of climbing poles and using the equipment it provided him. ALBAT's alleged breach of its duty caused plaintiff's injuries. Therefore, the harm that resulted is not out of proportion with the culpability of ALBAT in breaching its duty to plaintiff.

Third, there is nothing highly extraordinary about what took place in this case. As demonstrated above, it is clear that, if ALBAT's instruction was improper, it could cause the harm that resulted.

Fourth, plaintiff's recovery would not place an unreasonable burden on ALBAT. If found liable, ALBAT could continue to instruct individuals in pole climbing techniques. However, it would simply be required to follow the guidelines or instructions of the manufacturer or users who were experienced in the equipment ALBAT provided.

Fifth, remanding this case for trial would not encourage fraudulent claims. Plaintiff will be required at trial to make a showing that ALBAT's instruction was unreasonable and to prove all the elements of a negligence claim. Absent such a showing, plaintiff will not prevail. This case does not change the typical requirements for bringing a negligence suit. Thus, I do not perceive how allowing this case to continue as a negligence suit would encourage fraudulent claims.

Sixth, there is a sensible and just stopping point. When a plaintiff's claim violates one or more of the policy considerations provided by the majority, a sensible and just stopping point will have been reached. Here, as demonstrated above, plaintiff is able to avoid

implicating the policy reasons cited for precluding a case on the basis that it sounds in educational malpractice. Therefore, there is no reason to preclude plaintiff's claim.

B

Plaintiff's claim fits well with the confines of a general negligence claim. He is able to demonstrate that ALBAT had a duty to exercise reasonable care in instructing him how to climb poles. That duty arose when ALBAT provided him with pole climbing equipment and took upon itself the task of instructing him how to use it. See pp 727-728.

In addition, ALBAT's duty to exercise reasonable care arose as a result of the special relationship between the parties. *Schultz, supra* at 450-451. Plaintiff and ALBAT entered into a contract under which ALBAT was to teach plaintiff how to climb telephone poles. ALBAT had a duty to exercise reasonable care in the execution of that contract. *Clark v Dalman, supra* at 261.

Also, plaintiff sufficiently pleaded the second element of a negligence claim. Plaintiff alleged that (1) ALBAT did not advise plaintiff of a recall of the equipment, (2) ALBAT recommended, demonstrated, and supplied inappropriate linemen's systems for plaintiff's use, and (3) ALBAT failed to provide adequate instructions regarding the use of the equipment. We consider these allegations as true for purposes of our review. *Hartford Accident & Indemnity Co, supra*. Accordingly, plaintiff's allegations are sufficient to support his claim that ALBAT breached the duty it owed to him.

Finally, plaintiff sufficiently pleaded the third and fourth elements of his negligence claim. He alleged that his injuries were proximately caused by ALBAT's negligence.[6] Inherent in that allegation is the charge that ALBAT's negligence caused his injuries without the intervention of any unanticipated or unforeseeable event. See *Nielsen v Henry H Stevens, Inc*, 368 Mich 216; 118 NW2d 397 (1962) (defining proximate cause). To establish proximate cause plaintiff was required to allege facts sufficient to show cause in fact and legal cause. *Dedes v Asch*, 233 Mich App 329; 590 NW2d 605 (1998).

Plaintiff alleged that, when he fell, he was following ALBAT's instructions for maneuvering around an obstacle. Accepting that allegation as true, ALBAT's improper instructions were the cause in fact of his fall and injuries. But for the improper instructions, plaintiff would not have fallen. Moreover, there is no indication of any intervening causes that would supersede ALBAT's alleged negligence. Thus, I find that plaintiff made a sufficient showing of proximate cause to sustain his action.

### III. CONCLUSION

Plaintiff's complaint establishes a prima facie negligence claim, and it should be heard by a jury. His negligence claim is distinct from a claim for educational malpractice and, thus, should not be foreclosed by the application of a doctrine prohibiting claims of educational malpractice. Therefore, I would affirm

---

[6] There is no dispute over whether plaintiff suffered injuries from his fall. Thus, plaintiff has adequately pled the element of damages.

the Court of Appeals decision and remand this case to the circuit court for further proceedings.

CAVANAGH, J., concurred with KELLY, J.